Philip H. Wain, Appellee, v. Jerome Kravitz, Trading
as Medway Currency Exchange, Appellant.

Gen. No. 43,040.

Opinion filed December 19,
1944. Released for publication January 4, 1945.

LORD, BISSELL & KADYK, of Chicago, for appellant;
FRED E. INBAU, of Chicago, of counsel.

BERGER & NEWMARK, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the
court.

Plaintiff, as assignee of accounts receivable of the
Model Display Corporation, brought suit against de-
fendant, a currency exchange operator, who cashed a
$1,038 check payable to the assignor, which was in-
dorsed by the treasurer of the assignor company.
Trial by the court without a jury resulted in a finding
and judgment against defendant in the sum of $1,038
and costs, from which he appeals.

From the essential facts it appears that on April 25,
1941 plaintiff and the Model Display Corporation

entered into an agreement whereby the latter assigned to plaintiff its accounts receivable in consideration of plaintiff's promise to advance money on account thereof for a 10 per cent commission on the amount advanced. It was agreed that the money to be advanced should be used for labor and materials in the production of orders for the Model Display Corporation's products. Subsequently on October 10, 1941 the Model Corporation assigned to plaintiff the account of the du Pont Company on an order which that concern had placed with the Model Corporation for the delivery of certain Model displays. Over a period of approximately a year following the agreement plaintiff advanced to the Model Corporation from time to time the aggregate of $13,670.64, $985 of which was advanced on the du Pont order. At the time this suit was instituted the Model Corporation owed plaintiff $1,265.11.

As work was proceeding on the du Pont order late in December 1941 a representative of that company contacted H. F. Paschal, treasurer of the Model Corporation, and requested that an invoice be forwarded to du Pont so that the order could be placed upon its books for 1941. Paschal took a form of invoice to plaintiff, who filled it out and mailed it to du Pont. The invoice was dated December 30, 1941 and contained the following notation: "Make check payable to Philip Wain & Company and mail to: Philip Wain & Company, 38 South Dearborn Street, Chicago, Ill." Thereafter, early in January 1942, and after plaintiff had informed Paschal that no further moneys would be advanced by him to the Model Corporation, the boiler in the building in which the company was located exploded, ruining the entire du Pont order as it was about to be completed. A few days later a check was received by the Model Corporation from du Pont in the sum of $1,038 payable to the Model Display Corporation. Paschal, as treasurer, testified that upon

receipt of the check he had to either return the check to du Pont and close the business or cash the check and use the proceeds for the necessary material and labor involved in the completion of the du Pont order, and he decided to pursue the latter course because he evidently anticipated further orders from du Pont which would enable the Model Corporation to remain in business.

Having decided to cash the check, Paschal took it to defendant's currency exchange on January 10, 1942. He received in exchange for the du Pont check of $1,038 two money orders, one in the amount of $650 payable to Model Corporation, one for $69 payable to J. Edward Newberger, and the difference of approximately $300 in cash. The fee for cashing the du Pont check was $3. Two days later the $650 currency exchange money order was presented to defendant by the vice president of the Model Corporation, who received in exchange for it a $425 money order payable to the Model Corporation and the difference of $225 in cash. The following day the $425 currency exchange money order was presented to defendant by Paul G. Allen, vice president of the Model Corporation, who then received the full amount in cash. The $650 money order bears the indorsement "Model Display Corporation, 3945 N. Western Avenue, Chicago, Illinois," underneath which appears Allen's signature. The $425 money order bears the same indorsement, also signed by Allen. The evidence discloses that the entire cash proceeds of the $1,038 check and the foregoing money orders were used for the purpose of meeting the pay roll, for rent, gas and light bills, and the purchase of materials to finish the du Pont order and to keep the corporation alive.

It further appears from the evidence that for some time prior to January 1942 the Model Corporation, which was located some two or three blocks from defendant's place of business, had been using the cur-

rency exchange for banking purposes because the corporation's account at a local bank had been closed out for the reason that "it was not good enough." Over a period of several months prior to the cashing of the du Pont check Paschal cashed about 20 or 30 other checks at defendant's currency exchange, which were made payable to the Model Corporation and which bore Paschal's signature alone.

Paschal was not only the corporation's treasurer but also its general manager and "ran the business." He entered into contracts on behalf of the corporation and in many instances was the only officer who signed on its behalf. In the course of his duties as general manager and treasurer he received and indorsed checks made payable to the Model Corporation upon his signature alone as an officer of the corporation. Some of plaintiff's own checks payable to the corporation had been indorsed on its behalf by Paschal alone and cashed at the First National Bank of Chicago by him. Plaintiff testified that almost all of the dealings between him and Model Corporation were transacted with Paschal. Defendant testified, without contradiction, that he had no notice whatever of the Model Corporation's assignment to plaintiff of its accounts receivable.

In support of the judgment, plaintiff at the outset of his brief makes the contention that defendant was "in effect doing a banking business" in connection with the conduct of his currency exchange, in violation of par. 16, ch. 16½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 10.17], which makes it a misdemeanor for any natural person, firm or partnership to transact the business of banking, and therefore, his counsel say, he "cannot be allowed to use the law as a defence in his unlawful operation." Since this question was not brought to the attention of the trial court nor raised in the pleadings, plaintiff is precluded from urging it for the first time on appeal. *Albers v. West-*

*berg,* 299 Ill. App. 41, 52; *Notroma Corp. v. Miller,*
292 Ill. App. 612, 618, 619; *Bryan v. Pilgrim Nat. Life
Ins. Co.,* 294 Ill. App. 356; *Taylor v. Baker,* 295 Ill.
App. 1. Moreover, there is nothing in the record de-
cribing the functions and operations of a currency ex-
change or any facts whatsoever which would enable us
to determine whether the character of such a business
constitutes a violation of the statute. We have only
plaintiff's assertion that ''the defendant was . . .
doing a banking business in violation of the laws, of
the State of Illinois.''

The judgment against defendant was apparently
entered upon the theory that the du Pont check had
been assigned to plaintiff, and therefore the treasurer
of the assignor corporation had no authority to in-
dorse and cash it, and that the defendant who cashed
the check is obligated to plaintiff for the value thereof.
Asserting that ''this whole case hinges on a simple
point of agency,'' plaintiff argues that since defendant
knew he was dealing with an agent, he assumed the
burden of determining the extent of the agent's
authority. *Jackson Paper Mfg. Co. v. Commercial
Nat. Bank,* 199 Ill. 151, and *Strawn Farmers' Elevator
Co. v. James E. Bennett & Co.,* 168 Ill. App. 428, are
cited and relied upon to support the contention made.
The facts in the *Jackson* case are entirely different
from those in the case at bar. Plaintiff in that proceed-
ing was engaged in the manufacture and sale of paper
at Jackson, Michigan, and had employed one Charles A.
Jackson to act as superintendent of its mill at Jackson,
Michigan. The superintendent had gone to Chicago to
solicit orders and make sales of paper for the com-
pany. Herz & Son and E. W. Copelin & Co., paper
dealers in Chicago, were plaintiff's customers. Herz
was at that time indebted to plaintiff in the sum of
some $300 or $400. Jackson called on Herz & Son at
its store and settled with it its account with plaintiff,
accepting a check for $325.65 payable to the order of

the Jackson Paper Manufacturing Company and drawn upon the Commercial National Bank of Chicago. Jackson took the check to Copelin & Co., which had done business with plaintiff and had seen Jackson at plaintiff's plant acting as superintendent and manager of the mill. Jackson indorsed the check in the name of the firm by "C. A. Jackson, Supt.," and turned it over to Copelin, who procured the check to be certified by the bank upon which it was drawn and gave Jackson the currency. Copelin then indorsed the check over to the American Exchange National Bank, with which he did business, and deposited it to his credit in that bank. After the check had gone through the Chicago clearing house the amount thereof was charged to the account of Herz & Son. Jackson did not remit the money to the paper company in Michigan and the amount thereof was never received by it. The paper company first learned of the transaction after Jackson's death by suicide in New Orleans about a month later. It was not there contended that Jackson's duties involved the handling of currency or the making, indorsing or cashing of negotiable paper on behalf of the corporation; he was superintendent of the plant, whose general duties did not include the negotiation of commercial paper. In commenting on his status the Supreme Court said: "We fail to discover anything in the record in the present case to show, that the power to endorse the check here in controversy was within the general objects and purposes of the authority conferred upon Jackson." Moreover, the plaintiff corporation in the *Jackson* case had its place of business in Jackson, Michigan, and the check was cashed by the superintendent, not in Jackson, but in Chicago at a bank which had had no previous dealings with the plaintiff corporation. In the case at bar defendant's currency exchange was located two or three blocks from the Model Display Corporation and had cashed previous checks indorsed in the same man-

ner. Furthermore, in the *Jackson* case the proceeds of the check were appropriated by the superintendent for his own use without the corporation's knowledge or consent, whereas in the case at bar the proceeds of the du Pont check were used entirely for the purposes of the Model Display Corporation.

In the *Strawn Farmers' Elevator Co.* case upon which plaintiff also relies, the manager of plaintiff's grain elevators located in the towns of Strawn and Risk, Illinois, speculated on the Board of Trade in Chicago in the name of his corporation. In order to make good losses incurred in his speculations he gave the Chicago broker, defendant in that proceeding, several company checks and the company's promissory note executed by himself as manager, and also consigned to the broker several carloads of corn belonging to the company. When his firm learned of these transactions it discharged him and brought suit in assumpsit against the Chicago broker, against whom a verdict was rendered in favor of plaintiff. The court held that it was apparent from the written contract between plaintiff and its general manager that his authority was limited to the transaction of business connected with the grain elevators in the aforementioned towns and that the grain to be handled was limited to the two elevators in question. The court said: "The contention that Jordan [the manager] was appellee's general agent is not borne out by the proof. He was not so designated in the contract. He never signed his name as such. He never held himself out to be appellee's general agent. All his transactions in connection with the elevators and every paper signed by him as manager is entirely consistent with the position of local manager of the elevators. We are of the opinion that the scope of Jordan's authority was not such as to bind appellee in board of trade transactions."

It is suggested, however, that the evidence fails to disclose that Paschal was treasurer of the corporation,

except upon his own statement, which would not be competent proof of the agency, and that even if he was treasurer of the corporation, that would not necessarily imply the right on his part to cash a corporate check. With respect to the first of these contentions it appears that in plaintiff's statement of claim he alleged that Paschal was treasurer of the Model Display Corporation. That allegation was admitted in defendant's answer, and one of plaintiff's own exhibits bears Paschal's signature as treasurer. Under the circumstances, it was not incumbent upon defendant to prove Paschal's official capacity with the corporation; it was alleged and admitted by the pleadings, and proof of the fact was adduced by plaintiff himself.

With respect to the second contention it is argued that the right to cash checks, even if it be conceded that Paschal was treasurer of the corporation, cannot be implied from the duties of a treasurer to indorse checks and deposit funds, because, as counsel say, the right to cash checks was not indispensable to his duties as treasurer; and it is argued that the burden was on defendant to show Paschal's power and right to cash the check in question. Upon the record presented Paschal was not only the corporation treasurer but was the general manager who "ran" the business. He entered into contracts on behalf of the corporation, and in many instances he was the only officer who signed on its behalf. As shown in the statement of facts, checks payable to the corporation were, on many occasions, cashed by Paschal alone, and about 30 such checks had been cashed by defendant for Paschal prior to the instant occurrence, and, as a matter of fact, some of plaintiff's own checks payable to the corporation, had been indorsed on its behalf by Paschal alone and cashed by him at the First National Bank of Chicago. We think the evidence discloses that he had authority to indorse and cash checks for corporate purposes, because by permitting him to carry on the transactions

enumerated, the Model Corporation obviously clothed him with such authority and continuously sanctioned that practice.

It is true, of course, that under the assignment of accounts receivable, the Model Corporation was obligated to turn over to plaintiff the du Pont check and other checks received by it, but it is equally true that defendant had no notice whatsoever of the assignment of accounts to plaintiff, and in the absence of such notice he was under no liability to plaintiff for the cashing of the du Pont check, which was a negotiable instrument payable to the assignor and merely one of many checks that had been indorsed and cashed by Paschal in the course of business. It is an established principle of law that in the absence of notice of assignment, a payment to an assignor is valid as against the assignee. *Barker v. Barth,* 192 Ill. 460; *Morris v. Hankel Printing Co.,* 202 Ill. App. 331; *Central Trust Co. of Illinois v. Kendall,* 202 Ill. App. 294.

Contending that he is in the position of an innocent third party, plaintiff claims that he is unaffected by the fact that the proceeds of the du Pont check were used for the purposes and benefit of the Model Display Corporation. A similar situation arose in *American Export Lines, Inc. v. First Nat. Bank of Chicago,* 314 Ill. App. 385 (Abst.), wherein the plaintiff, general passenger agents, received a check from the Chicago Motor Club payable to plaintiff, which the agent indorsed and cashed. A portion of the proceeds of the check was used to refund money to one of the plaintiff's customers whose reservation had been canceled; another portion was transmitted directly to plaintiff; and the remainder was used to pay for necessary and proper expenses of plaintiff's passenger office, which was in charge of the general passenger agent, who indorsed the check. The general passenger agent had previously received specific instructions from plaintiff to remit directly to plaintiff's New York office all checks received by him. There was no evidence, how-

ever, that defendant knew of such instructions. Despite these instructions, the court held that since plaintiff had received the benefit of the proceeds of the check which was indorsed by its general agent, it would not be permitted to deny his authority. Commenting on the circumstances, the court said: "In an early Illinois case (*Shaffner v. Edgerton,* 13 Ill. App. 132), it was held that even if an agent had no authority to endorse certain checks, yet if the amount of these was received by plaintiffs they will not be permitted to allege his want of authority. In *Hamlins Wizard Oil Co. v. U. S. Express Co.,* 184 Ill. App. 493, (affirmed in 265 Ill. 156), it was held that where the plaintiff actually got the benefit of certain checks and drafts, the defendant should be credited with them although they were bought with part of stolen proceeds." *Miller v. American Export Lines, Inc.,* 307 Ill. App. 234, supports this doctrine.

In connection with the foregoing point plaintiff argues that there is no competent evidence that the proceeds of the du Pont check were used for the benefit of the Model Corporation. Paschal testified as to the use he made of the proceeds of the check. No objection was made to his testimony, which was unchallenged and uncontradicted.

For the reasons indicated we think the court erred in entering judgment for plaintiff, and since his counsel apparently concede that there is no dispute as to the essential facts by their admission in plaintiff's brief that "defendant's statement of the case and pleadings is substantially correct," it would serve no useful purpose to remand the cause for a new trial. Therefore, the judgment of the municipal court is reversed and judgment is entered here in favor of defendant for costs.

*Judgment reversed and judgment here for defendant.*

SULLIVAN, P. J., and SCANLAN, J., concur.