Precision Extrusions, Inc., Plaintiff-Appellee, v. Philip B. Stewart II, Belton E. Hall and Samuel H. Duhl, Defendants, Third Party Plaintiffs, Appellants. Wyckoff-Anderson, Inc., Third Party Defendant.

Gen. No. 48,196.

First District, Third Division.

March 28, 1962.

Rehearing denied and opinion modified April 26, 1962.

Bell Boyd, Marshall & Lloyd, of Chicago (Charles E. Herzog and Thomas R. McMillen, of counsel), for appellants.

Miller, Gorham, Wescott & Adams, of Chicago (John F. Arnold, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

A summary judgment in the sum of $12,500 was entered in the Superior Court of Cook County in favor of Precision Extrusions, Inc. (hereafter referred to as plaintiff) against Philip B. Stewart II, Belton E. Hall, and Samuel H. Duhl (hereafter referred to as defendants). It was alleged that the three defendants were directors of Stewart-Hall Corporation at the time it had purchased 1,275 of its own common shares from Monogram Glass Co., Inc. in alleged violation of sections 6 and 42 of the Business Corporation Act. The judgment for plaintiff was predicated on its second amended complaint, as amended. The trial court denied the defendants' motion to dismiss, and afterward they filed an answer and a counterclaim alleging setoff. No reply to the answer and no answer to the counterclaim were filed by the plaintiff. The court denied a petition for summary judgment in favor of the defendants.

The defendants' theory, as stated in their brief, is that the second amended complaint, as amended, did not state a cause of action; that the trial court should have sustained defendants' motion to dismiss; that the court erred in entering a summary judgment on plaintiff's motion because there existed disputed material issues of fact; and that the court erred in denying summary judgment in favor of the defendants.

The plaintiff contends that its second amended complaint, as amended, stated a good cause of action;

36

that the summary judgment entered on plaintiff's amended motion for summary judgment was properly granted; that the court in entering the summary judgment on the motion had a right to and did consider defendants' answer to plaintiff's second amended complaint, as amended, defendants' counterclaim and affidavit of Stewart attached to the answer, together with the affidavits of John F. Arnold, Simon H. Alster and Roy H. Johnson in support of the motion for summary judgment, together with exhibits attached thereto, and in addition portions of the discovery deposition of Stewart, plaintiff's request for admissions, and defendants' answer thereto.

The plaintiff contends that the court properly entered a summary judgment since there were no disputed material issues of fact.

The plaintiff in its second amended complaint, after the formal allegations with reference to the adjudication in bankruptcy of the Stewart-Hall Corporation (hereinafter referred to as Stewart-Hall) and the assignment by the trustee, pursuant to order of the referee, of the chose in action (the basis of the present suit), alleged that the defendants were directors of Stewart-Hall and in such capacity on December 22, 1954 unanimously voted that Stewart-Hall purchase from Monogram Glass, Inc. (hereinafter referred to as Monogram) 1,275 shares of Stewart-Hall capital stock at the price of $10 per share and that Stewart-Hall should hold such shares in the treasury as treasury stock; that Stewart-Hall gave its check to Monogram for $12,750 as consideration for the purchase of said shares; that Monogram cashed the check and assigned and delivered to Stewart-Hall the certificate for the said stock. The complaint further alleges, in paragraph 5, that "on said date, the net assets of Stewart-Hall Corporation were less than the sum of its stated capital, its paid-in surplus, any surplus arising from

unrealized appreciation in value or revaluation of its assets and any surplus arising from surrender to Stewart-Hall Corporation of any of its shares." In paragraph 9 it is alleged that "said purchase was not for the purpose of eliminating fractional shares, collecting or compromising claims of Stewart-Hall Corporation, or securing any indebtedness to Stewart-Hall Corporation previously incurred, paying dissenting shareholders entitled to payment for their share in the event of a merger or consolidation or a sale or exchange of assets, or effecting the retirement of its redeemable shares by redemption or by purchase." Paragraph 10 in the second amended complaint, as amended, alleged that such purchase was in violation of section 6 of the Business Corporation Act of the State of Illinois and, by reason thereof and by reason of the provisions of section 42 of the said Act, Stewart-Hall suffered damages in the amount of $12,500 and the defendants became liable to the said corporation therefor; and that plaintiff as the assignee of the aforesaid trustee in bankruptcy of Stewart-Hall is entitled to have and recover of the defendants the damages suffered as aforesaid.

The defendants had filed a motion to strike the first amended complaint of the plaintiff, which motion was by order of court ordered to stand against the second amended complaint, as amended. In the portions of that motion applicable the defendants have alleged that section 6 of the Business Corporation Act "constitutes a penalty" and an action under that section is barred by the two-year statute of limitations; that section 6 does not create an action for damages against the directors or officers of the corporation; that the trustee in bankruptcy had no cause of action which he could assign to the plaintiff since it appears from the amended complaint that the defendants did not receive the proceeds of the transaction complained

of, and even if the trustee had a cause of action against the defendants it was not assignable under Illinois law.

The court overruled defendants' motion to strike, and the defendants thereupon answered the complaint.

■ ■ It is, of course, the rule that a party pleading over after an adverse ruling on his objection to a complaint waives the right to object to the pleading or the ruling on the motion. However, this rule does not apply where the complaint totally fails to state a cause of action, and under such circumstances it is open to attack even though the defendant has pleaded over. 30 ILP Pleading, sec 236; People v. Powell, 274 Ill 222, 113 NE 614; Wright v. F. W. Woolworth Co., 281 Ill App 495. The rule in subsection (5) of section 48 of the Practice Act, providing that pleading over after a denial by the court of a motion under the section does not waive any error in the decision denying the motion, is not applicable here.

In the instant case the defendants on appeal contend that the second amended complaint, as amended, failed to state a cause of action. The complaint is based upon paragraphs 157.6 and 157.42 of chapter 32, Ill Rev Stats 1953, which chapter contains the Act commonly known as the Illinois Business Corporation Act. Section 6 provides that a corporation shall have power to purchase its own shares provided "that it shall not purchase, either directly or indirectly, its own shares when its net assets are less than the sum of its stated capital, its paid-in surplus, any surplus arising from unrealized appreciation in value or revaluation of its assets and any surplus arising from surrender to the corporation of any of its shares, or when by so doing its net assets would be reduced below such sum. Notwithstanding the foregoing limitations, a corporation may purchase or otherwise acquire its own shares for the purpose of: (a) Eliminat-

ing fractional shares. (b) Collecting or compromising claims of the corporation, or securing any indebtedness to the corporation previously incurred. (c) Paying dissenting shareholders entitled to payment for their shares in the event of a merger or consolidating or a sale or exchange of assets. (d) Effecting, subject to the other provisions of this Act, the retirement of its redeemable shares by redemption or by purchase at not to exceed the redemption price." Section 42(a) provides: "Directors of a corporation who vote for or assent to the declaration of any dividend or other distribution of the assets of a corporation to its shareholders shall be jointly and severally liable to the corporation for the amount of such dividend which is paid or the value of such assets which are distributed if, at the time of such payment or distribution, the corporation is insolvent or its net assets are less than its stated capital." Section 42(b) provides that if a declaration of a dividend or distribution of assets of a corporation renders the corporation insolvent, etc., the directors who vote for or assent to such action shall be jointly and severally liable. Section 42 further provides that a director shall not be liable under either subparagraph (a) or (b) of this section if he relied and acted in good faith upon a balance sheet and profit and loss statement of the corporation represented to him to be correct by the president or the officer of such corporation having charge of its books of account, or certified by an independent public or certified public accountant or firm of such accountants to fairly reflect the financial condition of such corporation, nor shall he be so liable if in good faith in determining the amount available for any such dividend or distribution he considered the assets to be of their book value.

Under the law as it existed in Illinois before the adoption of the statute a corporation had the right

to purchase its own shares where the purchase was made in good faith and without element of fraud and when the corporation was solvent. Commercial Nat. Bank v. Burch, 141 Ill 519, 528, 31 NE 420, 422; Republic Life Ins. Co. v. Swigert et al., 135 Ill 150, 25 NE 680; Freedman v. Madison & Kedzie State Bank, 259 Ill App 519. In giving the right to the corporation to purchase its own shares section 6 merely re-enacted the common law previously in existence. 6A Fletcher, Cyclopedia Corporations, secs 2848 and 2854 (Perm Ed); Clapp v. Peterson, 104 Ill 26; Bunker Hill Country Club v. McElhatton, 282 Ill App 221; Brown v. Fire Ins. Co. of Chicago, 265 Ill App 393. The limitations set out in the statute were an attempt to spell out the corporation funds from which such purchase could be made. Section 6 in general provides that the purchase of a corporation's own shares may be made out of earned surplus, and in the notes on the section, in 1 Illinois Business Corporation Act Annotated, sec 6, p 51 (2d ed), it is said: "Because of the difficulty in framing an adequate definition of earned surplus, the rule was stated indirectly, forbidding purchases 'out of' stated capital and various types of surplus other than earned surplus." In a critical survey of the Illinois Business Corporation Act by Henry Winthrop Ballantine in 1 U of Chicago L Rev, p 365, it is stated: "The Illinois draftsmen, however, have avoided the use of the term 'earned surplus' on account of the difficulty of framing any statutory definition of this accounting term, and have deemed it best to back into the concept by a process of elimination. . . . An Illinois corporation is not expressly limited in any way, even by solvency, in the purchase of its own shares for certain special purposes . . . ." (An amendment to section 6 not in effect at the time of the instant transaction now prohibits a corporation from purchasing its own shares under any circum-

41

stances when it is insolvent.) The complaint negatived the existence of all conditions under which the shares might have been purchased from defendants out of funds other than earned surplus.

 There are numerous cases in Illinois and elsewhere discussing the responsibility and liability of the directors of a business corporation. It is generally held that a director of a corporation, though not responsible for errors of judgment, is a fiduciary charged with the duty of caring for the property of the corporation and of managing its affairs honestly and in good faith. If this duty has been so violated as to result in an impairment of its assets or loss of its property he can, without the aid of statute, be compelled to make restitution. 3 Fletcher, Cyclopedia Corporations, sec 1011, p 514, (Perm Ed). Directors are liable for misappropriation of funds where they act ultra vires in authorizing the corporation to purchase its own stock. 3 Fletcher, Cyclopedia Corporations, sec 1022, p 529, (Perm Ed); Noyes v. Wood, 247 F 72; Uffelman v. Boillin, 19 Tenn App 1, 82 SW2d 545. In Lyons v. Corder, 253 Mo 539, 162 SW 606, it was held that where a loss results to the corporation because of the disregard of the duties of the directors as prescribed by statute the directors are liable. See also 3 Fletcher, Cyclopedia Corporations, sec 1046, (Perm Ed), citing Lyons v. Corder, supra, La Monte v. Mott, 93 NJ Eq 229, 107 A 462, 468. Ordinarily an action can be brought by the corporation against the directors, or in case of the insolvency of the corporation, by its receiver or assignee. 3 Fletcher, Cyclopedia Corporations, sec 1275, (Perm Ed).

██ ██ In Aiken v. Peabody, 168 F2d 615 (7th Cir), the court held the directors of the corporation would be liable under Illinois law when they authorized a declaration of dividends the payment of which would

reduce the "capital stock" of the corporation, providing that they acted in bad faith or were guilty of gross negligence or inattention, and the court further held that, while the case was based upon a statutory violation, the principle was one which had existed at common law. In the present case had the directors authorized the repurchase by the corporation of its own stock under the same circumstance, they could have been held liable at common law. Section 6 of the statute formulates rules with regard to an authorization of the repurchase of its own stock by a corporation, which places a definite duty on the directors. When the directors violate that duty it is not necessary that the statute specifically provide that they can be held responsible. At common law an action against them by the corporation or creditors would lie, since the result of such repurchase would be to illegally withdraw and pay to a stockholder a part of the assets of the corporation. When liability is imposed upon a director of a corporation by statute, his common law liability for misfeasance and negligence in the performance of his duty is not thereby excluded. 3 Fletcher, Cyclopedia Corporations, sec 993, (Perm Ed); Niblack v. Munday, 218 Ill App 385; Aiken v. Peabody, supra.

The plaintiff further alleges in its complaint that the act of the directors was a violation of section 42 of the Act. Under that section it seems clear that a repurchase by a corporation of shares of its stock at a time when the corporation is insolvent or its net assets are less than its stated capital is a distribution of its assets in part. In Pace v. Pace Bros. Co., 91 Utah 132, 59 P2d 1 (1936), the court construes a statute which made it a misdemeanor for any director "to divide, withdraw or in any manner, except as provided by law, pay to the stockholders, or any of them, any part of the capital of the corporation." It

43

was held that the statute was violated when the directors authorized the corporation to repurchase its own stock. The court says: "We see no reason why the prohibition against 'paying' to a stockholder a part of the capital does not include buying his stock. . . . Moreover, the phrase 'or any of them' is convincing that it does not contemplate purely a division pro rata, but the prohibition goes to paying any of the capital to any stockholder or stockholders, whether one or more." The court discusses at considerable length similar statutes in other states where the courts have reached the same conclusion. See also 6A Fletcher, Cyclopedia Corporations, sec 2852, (Perm Ed); Tiger Bros. v. Rogers Cotton Cleaner & Gin Co., 96 Ark 1, 130 SW 585.

In our view of the case the plaintiff has two causes of action, one involving section 6, the other brought under section 42 of the Act. On this phase of the case the only question for us to determine is whether or not the second amended complaint, as amended, states causes of action under sections 6 and 42 of the Act. In our opinion the complaint, defective in form as it is, does sufficiently state causes of action.

Defendants also argue that the statute under which the action is brought is penal. That objection, under the view we have taken of the case, can only go to the cause of action alleged under section 42 of the Act. The decisions on this question are not harmonious. In Woolverton v. Taylor, 132 Ill 197, 23 NE 1007, it was held that a statute making directors of a corporation liable for debts contracted in excess of its capital stock but not prohibiting such debts does not impose a penal liability but imposes a quasi contractual liability analogous to the liability of a surety. In Aiken v. Insull, 122 F2d 746, where an action was brought for the recovery of dividends im-

44

properly declared under the Corporation Act of 1919, the court held that the liability was not penal in character, that it is both in form and substance a private obligation similar in many respects to that of sureties, and that it was intended to afford additional security to the creditors. The instant suit is based upon wrongful action of the directors which allegedly caused damage to the corporation, creditors and other stockholders. If it was successful it would restore to the corporation its assets which they wrongfully distributed. The most satisfactory resolution of this question "is to hold that if a statute authorizes a recovery without regard to the actual damage sustained or to whether any damage has been sustained, it is penal; while if it merely authorizes a recovery of the actual damage sustained it is remedial and not penal . . . ." 3 Fletcher, Cyclopedia Corporations, vol 3, sec 1209 (Perm Ed), and cases therein cited.

 The second contention of the defendants is that the summary judgment entered in the trial court should be reversed. In their brief they urge reversal on various grounds. The only ground necessary for us to consider is whether there were material questions of fact at issue. We scarcely deem it necessary to repeat the statement made so many times in our decisions that the purpose of a summary judgment is not to try an issue of fact but is merely to determine whether or not a material issue of fact exists. "Where a defense raising an issue of fact as to plaintiff's right to recover is set up, a summary judgment must be denied." 23 ILP Judgments, sec 73; Shirley v. Ellis Drier Co., 379 Ill 105, 39 NE2d 329; Diversey Liquidating Corp. v. Neunkirchen, 370 Ill 523, 19 NE 2d 363.

In the answer filed by the defendants they alleged that the purpose of the transaction was to collect a claim of Stewart-Hall against Belton E. Hall in the

sum of $15,839.03. The answer further alleged that Stewart personally furnished the money for Stewart-Hall's purchase of the stock from Monogram; that the purchase was made by Stewart-Hall on behalf of Stewart individually; that the assets and value of Stewart-Hall were not reduced in any amount when it made such purchase; and that all of the directors knew and relied on these facts in making this transaction and they would not have made the purchase except under those circumstances. The defendants further alleged that Stewart-Hall had neither given nor promised any consideration to Stewart for his money; that Stewart did not make any claim against the corporation or against the trustee in bankruptcy for the funds which he had furnished for the transaction; and that neither the plaintiff, the trustee in bankruptcy, nor Stewart-Hall's creditors sustained any loss or damage because of the said transaction. It is further alleged that Stewart-Hall's purchase of Monogram's stock was based on a personal commitment by Stewart to one Carlyle Anderson, an owner and officer of Monogram, and the transaction was for the purpose of performing such commitment, and that if any wrong had been committed in Stewart-Hall's purchase of Monogram's shares plaintiff's remedy was against Monogram and not against the defendants.

The defendants filed a counterclaim, which alleged in substance that if the transaction complained of constituted a loan by Stewart to Stewart-Hall this was a debt of Stewart-Hall to Stewart, and Stewart had a claim against the corporation in bankruptcy in the amount of $12,500 and was entitled to a setoff in this amount against the trustee in bankruptcy pursuant to section 68 of the Bankruptcy Act, and that the plaintiff acquired the claim from the trustee in bankruptcy subject to Stewart's setoff which had never been paid or released. The defendants asked for a jury trial.

46

 

The plaintiff filed no reply to the answer, nor any answer to the counterclaim.

Under the pleadings in the instant case, in order that the directors could be held liable to Stewart-Hall or plaintiff, as its assignee, it would be necessary to prove that the directors of Stewart-Hall had violated the duty imposed on them by section 6, that the stock was not repurchased out of earned surplus, and that the purchase of the stock did not fall under the special purposes therein enumerated, or, relying on section 42, that the corporation was insolvent at the time when the stock was purchased or that the purchase of the stock so reduced its assets that it became insolvent. By the pleadings these are made issues necessary to be proved.

The plaintiff has attached to its complaint as an exhibit to its motion for summary judgment an affidavit of one Simon H. Alster, the attorney for Richard Rex Parkin, trustee in bankruptcy of Stewart-Hall. In that affidavit Alster states that in that cause on behalf of the trustee he prepared a petition for leave to solicit bids for the sale of the cause of action in question, and a copy of the sworn petition of Parkin, the trustee, is attached. In the petition Parkin says that he is informed that sometime in December 1954 the bankrupt herein, then being insolvent, purchased 1,250 shares of its own capital stock from either Monogram or Wyckoff-Anderson, Inc. and paid for the said shares $12,500. In the affidavit of Belton E. Hall which was attached to the defendants' motion for summary judgment he says that "Stewart-Hall Corporation on December 22, 1954 did not have cash or assets available for making the foregoing purchase from Monogram Glass Company, Inc." In the same affidavit he makes the statement that Stewart gave Stewart-Hall $12,500 to replace the amount paid by the corporation for the stock. In his deposition Philip E.

Stewart II states that at the time of the purchase the financial statements of Stewart-Hall showed that it had a net worth of $1,500 and that assets less liabilities equal net worth. The record shows that these were the only references made to the financial condition of Stewart-Hall at the time of the stock purchase which were considered and relied upon by the trial court in entering the summary judgment. In paragraph 9 of the second amended complaint, as amended, the plaintiff alleged that the repurchase of the shares was not for the purpose of, among other things, collecting or compromising claims of Stewart-Hall or securing any indebtedness to Stewart-Hall previously incurred. In their answer the defendants specifically deny that allegation, and state that one of the reasons for the transaction was to collect a claim of Stewart-Hall against one of the defendants, Belton E. Hall, in the amount of $15,839.03. The plaintiff on this point argues that an analysis of the record will make it clear as a matter of fact that the purpose of purchasing the stock from Monogram was not to enable Stewart-Hall to collect a debt owing to it from one of its officers and directors, nor was it for the purpose of collecting a claim of Stewart-Hall within the meaning of section 6. The plaintiff then sets out the facts in the case, analyzes them and reaches this conclusion. However, in reaching such a conclusion it is necessary to deal with conflicting factual statements and the possibility of different inferences being drawn from the same facts, all of which are matters which should be determined by a trier of the fact upon a trial and not on a motion for summary judgment. This is not sufficient to resolve all material questions of fact raised in the case so as to permit the court to properly enter a summary judgment.

In their answer the defendants allege that they lack sufficient knowledge to form a belief concerning the allegations of the plaintiff that at the

48

time of the repurchase of the stock Stewart-Hall was insolvent and that the purchase was made out of assets of the corporation other than earned surplus. In section 40 of the Civil Practice Act it is provided in part: "Every allegation . . . not explicitly denied is admitted, unless the party states in his pleading that he has no knowledge thereof sufficient to form a belief, and attaches an affidavit of the truth of the statement of want of knowledge . . . ." The answer under that section raises an issue of fact with reference to the insolvency of Stewart-Hall at the time of the repurchase of the stock.

The plaintiff also argues that the defendants have not attached a sufficient affidavit to their defense to satisfy the requirements of section 40 of the Practice Act. Even if that were true, it is the rule that where the parties proceed to trial they waive formal defects in the pleadings. 30 ILP Pleading, sec 235. In Martin v. Cole, 331 Ill App 597, 73 NE2d 633, the court says:

> "We see no merit to plaintiff's contention that the Defence of Cole and Fields was insufficient to deny more than detention and that it admitted other allegations. We think the formal plea that Cole and Fields interposed in effect neither admitted nor denied the allegations and put plaintiff on proof. It is true that no affidavit was filed in connection with this Defence. Plaintiff did not attack this pleading, however, as he had previous pleadings of these defendants. On the contrary, after it was filed, he moved to bring the cause on for trial. We, therefore, hold that he waived the formal deficiencies in defendants' pleading."

Also see Head v. Wood, 20 Ill App2d 97, 155 NE2d 348. The same rule applies to a summary judgment proceeding.

The plaintiff argues very strenuously that the trial court had the right to consider the original complaint filed by the plaintiff and the answer to that complaint filed by the defendants. It is of course true that the allegations contained in a pleading are judicial admissions and are conclusive against the pleader provided the pleading has not been amended, abandoned, or withdrawn. In the original complaint the plaintiff made similar allegations with reference to the insolvency of Stewart-Hall at the time of the purchase of its own stock. The defendants in their answer admitted that allegation. An amendment, complete in itself, which does not refer to or adopt the prior pleading, ordinarily supersedes it and the prior pleading ceases to be a part of the record for most purposes, being in effect abandoned or withdrawn. 30 ILP Pleading, sec 113; Nolan v. American Tel. & Tel. Co., 326 Ill App 328, 351–352, 61 NE2d 876, 885–886; Wright v. Risser, 290 Ill App 576, 8 NE 2d 966; W. P. Iverson & Co. v. Dunham Mfg. Co., 18 Ill App2d 404, 425, 152 NE2d 615, 625. The same rule applies to an answer to an amended and abandoned complaint. City Nat. Bank & Trust Co. v. Oberheide Coal Co., 307 Ill App 519, 30 NE2d 753. In the trial of the case such withdrawn pleadings may be introduced in evidence and they have no greater or less effect than any other admission offered. Cleary, Handbook of Illinois Evidence, sec 13.-11 and cases cited. Also see City Nat. Bank & Trust Co. v. Oberheide Coal Co., supra. Such *"evidential* admissions are to be distinguished from *judicial* admissions. Judicial admissions are not evidence at all, but are formal admissions in the pleadings, or stipulations, oral or written, by a party or his counsel which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus the judicial admission, unless it should be al-

lowed by the court to be withdrawn, is conclusive, whereas the evidential admission is not conclusive (unless the adversary should fail to meet it with contrary evidence) but is always subject to be contradicted or explained." McCormick on Evidence, sec 239, p 504. In a summary judgment proceeding it would seem that in all fairness, if it was intended to use an admission in a withdrawn pleading as an evidentiary admission, it should be indicated either in the motion or the affidavit so as to direct the attention of the other party to the intended use and afford him by counteraffidavit the opportunity either of explaining or controverting the statement, in either of which case it would raise a question of fact. This procedure was not followed in this case. The plaintiff can place no reliance upon the original complaint and the answer thereto.

 As we have pointed out, the pleadings in this case raised material issues of fact, throwing the burden upon the plaintiff of proving the allegations of its complaint by showing the financial condition of Stewart-Hall at the time of the repurchase of the stock and the circumstances surrounding such purchase so as to bring it within the provisions of section 6 or 42 of the Corporation Act. This was not done. There were material issues of fact left unresolved, and a summary judgment could not, and should not, have been entered in the trial court.

 The defendants also moved for a summary judgment, and they urge that the trial court erred in not entering a summary judgment in their favor. The same objections which would prevent the entry of a summary judgment in favor of the plaintiff are also applicable to the motion of the defendants. There are material questions of fact involved which cannot be determined in a summary judgment proceeding. The defendants are not helped in any way by the fact that

51

they filed a counterclaim seeking a setoff if the transaction complained of should be held to be a loan by Stewart to Stewart-Hall, nor does the fact that the plaintiff filed no reply thereto help them in any way. If the counterclaim, lacking a reply, would have any decisive effect in the trial of the case, that result could only be reached provided there had been a factual finding that the transaction in question constituted a loan. In the proceedings that stage of determination had not been reached, and since there had been no such determination no effectiveness can be given to the unanswered counterclaim. In Allen v. Meyer, 14 Ill2d 284, 292, 152 NE2d 576, 580, the court holds that when both parties move for summary judgment and when only a question of law is involved the court should properly enter judgment either for the plaintiff or the defendant. That rule does not apply here. In this State the fact that both parties move for a summary judgment does not require the court to enter a judgment for one or the other. The order of the trial court denying defendants' motion for summary judgment was not erroneous.

 ██ The defendants moved to set aside the judgment against them and in that motion they alleged that the court in order to enter judgment had to resolve, among others, the disputed issue of fact which we have just referred to, and to that motion they attached the affidavit of Samuel H. Juhl, who stated that he was a certified public accountant and the auditor for Stewart-Hall during the year 1954 and through December 1954, and that a balance sheet of Stewart-Hall of November 30, 1954 showed that the corporation was solvent. The affiant further states that no further balance sheet or statement of condition was made before the stock repurchase which occurred on December 22 and 23, 1954, and that the condition of the corporation's net assets on those dates

52

cannot be accurately ascertained by affiant or the other members of the former board of directors of Stewart-Hall. The affiant further stated that the transaction did not render the corporation insolvent. The only way in which the question of the insolvency of Stewart-Hall could be resolved at the time the summary judgment was entered would be by considering the abandoned complaint and answer as constituting a judicial admission. We think that the court should have considered the affidavits of the defendants presented on their motion to vacate the summary judgment. Ordinarily whether to allow affidavits to be filed after the hearing is within the discretion of the trial court. Winger v. Richards-Wilcox Mfg. Co., 33 Ill App2d 115, 178 NE2d 659; Gliwa v. Washington Polish Loan & Bldg. Ass'n, 310 Ill App 465, 34 NE2d 736. However in this case the only way in which it could be held that at the time of the repurchase Stewart-Hall was insolvent would be by considering the withdrawn complaint and answer as a judicial admission, which we have pointed out the court could not properly do. Under those circumstances the refusal of the court to vacate the summary judgment was an abuse of discretion. The court improperly denied defendants' motion to set aside the summary judgment.

Pursuant to an order entered on March 25, 1960 the defendants filed a third party complaint against Wyckoff-Anderson, Inc. asking for a judgment in their favor against Wyckoff-Anderson, Inc. in the amount of $12,500 on the ground that the third party defendant, formerly named Monogram Glass Co., Inc., had received the proceeds of the sale of the 1,275 shares of Stewart-Hall stock, which transaction was the basis of plaintiff's recovery of judgment against defendants. The third party defendant was served, and it made a motion under section 72 of the Practice Act

to set aside or stay the judgment order of the court entered on March 25, 1960, setting up the same grounds as those set up by the defendants, and alleging that by the court's judgment order there was a deprivation of the right to a trial by jury. This motion the court denied. From that order of the trial court the third party defendant, Wyckoff-Anderson, Inc., appeals and here adopts the argument of the defendants in asking that the order of the court in refusing to vacate the judgment be reversed.

The orders of the trial court of June 18 and June 22, 1959, overruling the defendants' motion to dismiss plaintiff's second amended complaint, as amended, are affirmed. The order of June 1, 1960 denying defendants' and third party defendant's motions to set aside the summary judgment entered on March 25, 1960 is reversed, and the cause is remanded with directions to the trial court to vacate the summary judgment order entered on March 25, 1960, to deny the motions of plaintiff and defendants for summary judgment, and for further proceedings consistent with the views expressed herein.

Affirmed in part, reversed in part and remanded with directions.

DEMPSEY and SCHWARTZ, JJ., concur.