FARWELL CONSTRUCTION COMPANY, Plaintiff-Appellant, *v.* HAROLD J. TICKTIN *et al.*, Defendants-Appellees.

First District (5th Division)   No. 77-802

Opinion filed April 14, 1978.—Rehearing denied May 24, 1978.

Harvey J. Barnett, Robert R. Tepper, and Ross P. Benjamin, all of Chicago, for appellant.

Joseph J. Ticktin, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, judgment was entered against plaintiff in its action for damages because of an alleged breach of a real estate sales contract and against defendants on their counterclaim. Only plaintiff has appealed, and it presents the following issues: (1) whether the court erred (a) in holding that no contract existed because plaintiff had failed to exercise an option and (b) in allowing defendants[1] to amend a pleading after judgment to deny their prior admission that the option was exercised; (2) whether the court erred in denying plaintiff's request for fees and expenses in the defense of defendants' claim; and (3) the evidence demonstrated defendants' breach of contract so that a judgment could be entered for plaintiff here.

On August 17, 1972, the parties entered into an agreement whereby plaintiff paid defendants $10,000 for a 60-day option to purchase for $340,000 a real estate development package known as Brush Hill Apartments. The package consisted of property located in Naperville, Illinois, the architectural working papers, survey, soil test reports, engineering studies, defendants' future contractual rights to construction loans, and an application for mortgage insurance pending with the Federal Housing Administration (FHA).

The financial viability of the project depended on the issuance by FHA of a mortgage insurance commitment based on the architectural plans submitted, which had to meet prescribed FHA construction standards to obtain the commitment.

On the day of the execution of the option agreement, the parties also entered into a side letter agreement under which defendants warranted that the plans entitled "Brush Hill Apartments, December __, 1971 * * *" were approved by and met the requirements of FHA. The side letter agreement also provided that in the event FHA, prior to its initial endorsement of the insured mortgage note, requires "any changes, refinements or modifications" in said plans which shall increase construction costs by more than $20,000, defendants will pay at the initial endorsement the full amount of any increased construction costs in excess of $20,000. The parties use the term "initial endorsement" to mean the time when the mortgage insurance commitment was issued by FHA and the first loan proceeds were disbursed.

---

[1] All parties have treated the separate defendants as having the same interest.

Later, in a letter to defendants dated November 10, 1972, plaintiff stated that it was exercising the option and, in the same letter, it informed defendants that the architectural plans did not meet FHA requirements; that the cost to do so would be in excess of $20,000; that the exact amount of the cost would be provided "when a closing date was established"; and that payment of those costs would be expected "at the initial endorsement of the F.H.A. mortgage."

Then, on January 29, 1973, plaintiff sent a letter to defendants enclosing a list of 12 changes plaintiff stated were required by FHA. The letter also informed defendants that plaintiff was claiming a credit for the estimated construction costs for those changes of $122,069.76 (total cost of $147,069.76 less the $20,000 deductible) and that plaintiff was ready to close the transaction by a payment to defendants of $212,930.24 (the purchase price of $340,000 less the claimed credit of $122,069.76). A suggested closing date of February 8, 1973, and an escrow date of February 5, 1973, were suggested by plaintiff in the letter. Defendant replied on February 1, 1973, agreeing to the February 8 closing and a February 5 meeting to draw up the escrow, but denied that plaintiff was entitled to the credits mentioned in its January 29, 1973, letter.

Plaintiff then brought suit on February 15, 1973, for specific performance and defendants, in a motion to dismiss, asserted that they had no legal or equitable title to the property. Upon learning this, plaintiffs filed a verified amended complaint seeking damages for breach of contract and, in their verified answer thereto, defendants admitted the exercise of the option. Subsequently, defendants sought damages against plaintiff in a counterclaim in which defendants alleged that plaintiff had exercised the option and had breached the agreement. Thereafter, the counterclaim was amended to include a count alleging that plaintiff had tortiously interfered with a contract between defendants and American Housing Partners (AHP). On October 25, 1976, the trial court entered judgment against plaintiff in its action and against defendants on their counterclaim. In a memorandum filed with the judgment order, the court stated that it found against plaintiff because the option had never been exercised. After its judgment, the trial court on February 4, 1977, granted defendants' motion to amend their answer to deny a prior admission that the option was exercised but denied plaintiff's post-trial motion and its motion for the taxation of its expenses and attorneys' fees in defending the counterclaim. Plaintiff is appealing from the October 25, 1976, judgment against it and from the February 4, 1977, order. Defendants have not cross-appealed.

OPINION

In stating its first contention, plaintiff argues that the trial court erred in

finding that the option agreement had not been exercised and in allowing defendants to amend a pleading after judgment to deny a prior admission by defendants that plaintiff had exercised the option.

In support of its position, plaintiff points to the following: (1) that defendants received its letter of November 10, 1972, in which plaintiff wrote:

> "Pursuant to a certain Grant of Option dated August 17, 1972 granted by you to the undersigned and a letter dated August 17, 1972 from you to the undersigned, the undersigned [plaintiff] does hereby exercise the option therein described";

(2) that after the November 10 letter, the parties took numerous steps toward the closing of the transaction, which indicated their belief that the option had been exercised; (3) that all of the other evidence, including the trial theory of defendants, supported the fact that the option was exercised; (4) that in their verified answer to plaintiff's verified amended complaint, defendants admitted the option had been exercised; and (5) that in their counterclaim, defendants asserted that plaintiff had exercised the option. In response thereto, defendants make only the following argument—that the November 10 letter, while stating that plaintiff exercised the option, also "mentioned unspecific additional construction costs for which it expected a reduction in the purchase price, and defendants had a right to assume that plaintiff did not intend to claim unjustified increase. Unknown to defendants, plaintiff was in fact changing the terms of the contract, therefore there was no meeting of the minds." We see no merit in this argument—not only because it appears clear from the language in the letter that the statement of plaintiff that it was exercising the option was not conditioned on any agreement as to the credits for additional construction costs, but also because defendants judicially admitted the exercise of the option.

■■ Once a statement of fact has been admitted in the pleadings, it constitutes a judicial admission and makes it unnecessary for the opposing party to introduce evidence in support thereof. (*Western Life Insurance Co. v. Chapman* (1975), 31 Ill. App. 3d 368, 334 N.E.2d 806, *cert. denied* (1976), 424 U.S. 927, 47 L. Ed. 2d 337, 96 S. Ct. 1140; *Vincent v. Wesolowski* (1967), 87 Ill. App. 2d 477, 232 N.E.2d 120; *Precision Extrusions, Inc. v. Stewart* (1962), 36 Ill. App. 2d 30, 183 N.E.2d 547.) In *Precision Extrusions, Inc v. Stewart*, the court stated:

> "Judicial admissions are not evidence at all, but are formal admissions in the pleadings, * * * which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." (36 Ill. App. 2d 30, 50, 183 N.E.2d 547, 556.)

When the admission is made in a verified pleading, it remains binding upon the pleader even after an amendment. *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749; *Burdin v. Jefferson Trust & Savings Bank* (1971), 133 Ill. App. 2d 703, 269 N.E.2d 340.

■■ In the instant case, plaintiff's verified amended complaint alleged it exercised the option, and defendants in their verified answer admitted that allegation. This was a judicial admission, which removed any factual issue as to the exercise of the option from the trial and dispensed with the need for proof thereof. Further, defendants also judicially admitted the exercise of the option in an allegation to that effect in their counterclaim, in which they sought damages for alleged breach of the agreement by plaintiff.

■■ Additionally, we believe the trial court abused its discretion in allowing defendants to amend their answer after final judgment to deny their prior admission that the option had been exercised. A trial court has broad discretion with respect to the granting or denial of leave to amend pleadings prior to the entry of a final judgment. (*Wheat v. Freeman Coal Mining Corp.* (1974), 23 Ill. App. 3d 14, 319 N.E.2d 290.) After final judgment, however, a pleading may be amended only to conform the pleadings to the proof. (Ill. Rev. Stat. 1975, ch. 110, par. 46(3); *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 273 N.E.2d 403.) Here, the amendment did not conform to the proof which, as stated above, established the option was exercised. The amendment was improperly allowed for the additional reason, as stated above, that defendants judicially admitted that fact in their verified answer, which remained binding on them (*Yarc v. American Hospital Supply Corp.*) and admitted it in their counterclaim.

We hold, therefore, that the trial court erred in finding that the option was not exercised, and we conclude that a contract existed between the parties.

Plaintiff next contends the trial court erred in denying its petition for expenses and attorneys' fees incurred in defending against defendants' counterclaim. The petition was brought pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 41) which, at that time, provided:[2]

> "Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party

---

[2] Section 41 was amended by Public Act 79-1434, §8, effective September 19, 1976. The amendment eliminated the requirement that the moving party show that the untrue statements were not made "in good faith." (Ill. Ann. Stat., ch. 110, par. 41 (Smith-Hurd Supp. 1977).)

> pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial."

Section 41 was enacted to prevent the abuse of the judicial process by penalizing the litigant who brings vexations or harassing actions based upon false statements or brought without legal foundation. (*Dudanas v. Plate* (1976), 44 Ill. App. 3d 901, 358 N.E.2d 1171; *Murczek v. Powers Label Co.* (1975), 31 Ill. App. 3d 939, 335 N.E.2d 172.) Since section 41 is penal in nature, it should be invoked only in those cases following strictly within its terms. (*Murczek v. Powers Label Co.* (1975), 31 Ill. App. 3d 939, 943, 335 N.E.2d 172, 176.) The burden is on the petitioner to show that the allegations (1) were made without reasonable cause; (2) are not in good faith; and (3) are untrue. (*Horween v. Dubner* (1965), 68 Ill. App. 2d 309, 216 N.E.2d 288.) The allowance of fees under section 41 is discretionary, but the court can only exercise such discretion when the record discloses evidence of bad faith. *Dudanas v. Plate; Grandys v. Spring Soft Water Conditioning Co.* (1968), 101 Ill. App. 2d 225, 242 N.E.2d 454.

Here, the count in defendants' counterclaim seeking damages for tortious interference with the contractual relationship between defendants and AHP alleged that the latter, an investment firm, promised to invest $303,000 for a 95% equity interest in the Brush Hill Apartment project; that because of rising construction costs, defendants arranged to meet with the executives of AHP to negotiate an increase in its promised investment; that plaintiff, having knowledge of the negotiations, communicated with AHP and induced it to refuse the increase—thereby making it financially unattractive for defendants to proceed with the project; and that, after plaintiff obtained an option to purchase defendants' interest in the project, plaintiff prevailed upon AHP to invest $341,000 for the same equity interest that defendants had originally offered AHP. Defendant Ticktin testified that he went to Washington at the invitation of AHP to finalize a revised contract for its investment of about $340,000 (the original amount was $303,000) and that when he arrived at the office of AHP, he was informed that "we don't need you any more" and he was then ushered out of the office. That same day, he told plaintiff's representative, who was also in Washington, what had happened. Ticktin testified that later that day plaintiff, through the same representative, prevailed upon AHP to invest $340,000 for the same equity interest he had discussed with AHP.

Since the award of costs or fees is discretionary (*Thomas v. Thomas* (1974), 23 Ill. App. 3d 936, 321 N.E.2d 159), the determination of the trial court should not be disturbed on review unless there is a clear abuse of discretion (*Alswang v. Claybon* (1976), 40 Ill. App. 3d 147, 351 N.E.2d

285; *Bayles v. Bennett* (1974), 22 Ill. App. 3d 144, 316 N.E.2d 792). It appears here that there was a relationship between plaintiff's attorney and AHP to the extent that they met on the same day that negotiations between defendants and AHP ended, and plaintiff then entered into an agreement with AHP whereby the latter agreed to invest the approximate amount defendants were seeking. Inherent in the judgment of the court denying plaintiff's petition was a finding that defendants' allegations were not made in bad faith. In the light of the foregoing and from our further review of the record, we cannot say that the court abused its discretion in so finding.

There remains to be considered the contention of plaintiff that we should enter judgment here for it under Supreme Court Rule 366(a)(5), because the evidence established an anticipatory breach of the contract and damages were reasonably certain from the record.

■■ Supreme Court Rule 366(a), in pertinent part, provides that a reviewing court may, in its discretion and on such terms as it deems just: "(5) give any judgment and make any order *that ought to have been given or made * * *.*" (Ill. Rev. Stat. 1975, ch. 110A, par. 366(a).) Decisional law has established that the record must clearly show entitlement before judgment should be entered by a reviewing court under Rule 366 (formerly section 92 of the Civil Practice Act). (See *Lind v. Spannuth* (1956), 8 Ill. App. 2d 442, 446, 131 N.E.2d 796, 799, where it was stated "the record disclosed no question of fact for decision"; *Wain v. Kravitz* (1944), 324 Ill. App. 488, 497, 58 N.E.2d 626, 630, in which it was said "there is no dispute as to the essential facts"; and *New England Co. v. Parking Meter Corporation of America* (1941), 312 Ill. App. 183, 37 N.E.2d 887 (abstract), where it appears that there was no conflict in the evidence and that no useful purpose would be served in remanding.) Thus, whether judgment "ought to have been given" to plaintiff, as it contends, depends upon whether the record clearly shows an anticipatory breach of the agreement by defendants and damages to plaintiff.

■■ When a party to an executory contract gives notice of his intention not to comply with his obligations or otherwise repudiates his obligations before the time of performance, the other party may treat such notice as an anticipatory breach and regard the contract as terminated. (*Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 364 N.E.2d 939; *Stonecipher v. Pillatsch* (1975), 30 Ill. App. 3d 140, 332 N.E.2d 151; 4 Corbin on Contracts §959, at 852 (1951); Restatement of Contracts §318, at 329 (1932).) Before the promisee is justified in treating a renunciation as an anticipatory breach, there must be a positive and unequivocal manifestation of intention that the promisor will not render the promised performance when the time fixed in that contract has arrived. (*Stonecipher v. Pillatsch*; Restatement of Contracts

§318 (1932); 4 Corbin on Contracts §973, at 905 (1951).) A definite statement to the promisee that the promisor either will not or cannot perform the contract will operate as an anticipatory breach. (4 Corbin on Contracts §959, at 856 (1951); 11 Williston on Contracts §1322, at 134 (3d ed. 1968).) On the other hand, a refusal to perform does not amount to an anticipatory breach where it is due to a promisor's good faith belief that a condition of his duty to perform has not happened (4 Corbin on Contracts §973, at 910 (1951)), or where the parties disagree in the interpretation of the contract (4 Corbin on Contracts §973, at 911 (1951)), or where doubtful and indefinite statements are made that performance may or may not take place or mere requests to change the terms of a contract are made. 4 Corbin on Contracts §973, at 906 (1951); 11 Williston on Contracts §1322, at 133 (3d ed. 1968).

In the instant case, defendants promised to pay plaintiff at the initial endorsement for any changes required by FHA in the architectural plans which would increase the construction costs by more than $20,000. In its letter of November 10, 1972, exercising the option, plaintiff also notified defendants that FHA was requiring changes in the plans as a condition to its issuance of the insurance commitment. Subsequently, by letter of January 29, 1973, plaintiff attached a list of 12 changes which it asserted were required by FHA, along with an estimate of the additional construction costs for those changes. In this letter, plaintiff also claimed a credit for those costs in the amount of $122,079.96; stated it was ready to close for $212,930.24 (the $340,000 contract price less the claimed credit); and suggested specific closing and escrow dates. In their reply of February 1, 1973, defendants agreed to the suggested closing and escrow dates but stated that plaintiff was not entitled to the claimed credit because the 12 changes were not required by FHA, as asserted by plaintiff. Defendants appeared for the closing and escrow on the suggested dates, but plaintiff did not.

In view of the conflicting testimony of the witnesses and because we may not determine their credibility or the weight to be given their testimony, we are unable to say that there was a positive and unequivocal manifestation of intention on the part of defendants not to render the promised performance of the agreement at the time fixed in the contract, which was the date of initial endorsement. (*Stonecipher v. Pillatsch.*) Under the circumstances, we do not believe that judgment ought to be given in this court. Rather, it is our opinion that the interests of justice would best be served by remanding this matter to the trial court for its determination of the questions of breach of contract and damages resulting therefrom. We do not consider the statement in the court's memorandum concerning an anticipatory breach to be a finding. It was not characterized as such and could not have been, as the court had

already held in its judgment order that the option had not been exercised and thus that no contract existed between the parties. This is clear also from the memorandum itself, where it was stated that plaintiff was not entitled to recovery because it had never accepted the option, and that defendants' counterclaim for breach of contract was without merit because there was no contract. As the court stated in the memorandum, "There can be no anticipatory breach of an option agreement until the option is accepted."

For the reasons stated, the judgment denying plaintiff's petition for expenses and attorneys' fees in defending the counterclaim of defendants is affirmed; the order allowing defendants to amend their answer to deny a prior admission that the option was exercised is reversed; the judgment in favor of defendants on plaintiff's first amended complaint is reversed and the cause is remanded to the trial court for proceedings necessary to make findings on the questions of breach of contract and damages.

Affirmed in part.

Reversed in part.

Remanded for further proceedings.

MEJDA and WILSON, JJ., concur.