BERNADINE LEIN, Adm'x of the Estate of Wilbert Lein, Deceased, Plaintiff-Appellee, *v.* MARIE PIETRUSZEWSKI, d/b/a FULLERTON DRAKE LOUNGE, *et al.*, Defendants-Appellants.

(No. 60130;

First District (3rd Division)—December 5, 1974.

Paul H. Heineke, of Heineke & Schrader, of Chicago, for appellants.

John B. Kincaid, of Mirabella, Facktor, Mirabella & Kincaid, of Wheaton, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This appeal is from a judgment in the trial court entered against defendants, Marie Pietruszewski, Robert Culum, and Julia Culum, under the Dram Shop Act. (Ill. Rev. Stat. 1969, ch. 43, par. 135.) In her complaint, Bernadine Lein, as administratrix of the estate of Wilbert Lein, deceased, alleged that Robert and Julia Culum were the owners or trustees of the Fullerton Drake Lounge located at 3545 W. Fullerton Avenue in Chicago and that Marie Pietruszewski was the operator of said lounge; that they respectively sold and permitted to be sold alcoholic beverages to Daniel D'Amico and Edward Kuffel to the point that they became intoxicated; and that as a result of such intoxication they stabbed plaintiff's decedent and caused his death. The jury returned a verdict against defendants and defendants now appeal.

We affirm.

On appeal defendants present three issues for review: (1) whether the plaintiff, suing as an administratrix, was the proper party in the action under the Dram Shop Act to recover for injuries to the means of support of herself and her two minor children; (2) whether the trial court ruled correctly when it sustained an objection to the competency of Mr. D'Amico as a witness and precluded him from testifying at all; and (3) whether the verdicts of the jury are so irrational that they may not be permitted to stand.

On September 27, 1969, Wilbert Lein and Chester Horton arrived at the Fullerton Drake Lounge in Chicago in the early evening. At about 11 P.M. that evening discord developed in the lounge and Horton and Lein began to argue with two other patrons in the lounge, Dan D'Amico and Edward Kuffel. All four of them left the tavern and a fight started. Horton chased D'Amico to his car to continue the fight after D'Amico had retreated to his automobile. D'Amico came out of his car carrying a knife and in the ensuing affray he stabbed Horton four times and stabbed Lein, who died from the wound.

As a result of this incident a three-count complaint was filed in the circuit court of Cook County. In Count I, decedent's administratrix, Bernadine Lein, brought action under the Dram Shop Act (Ill. Rev. Stat. 1969, ch. 43, par. 135) against defendants Marie Pietruszewski, the tavern operator, and Robert and Julia Culum, the owners of the premises. In Count II, decedent's administratrix brought a wrongful-death action under the Injuries Act (Ill. Rev. Stat. 1969, ch. 70) against Dan D'Amico and Edward Kuffel. In Count III, Chester Horton brought a common-law negligence action against D'Amico and Kuffel. The jury returned a verdict of $135,000 against the three defendants in Count I and this amount was reduced by the trial court to $20,000, the maximum recoverable under the Dram Shop Act. The jury returned a verdict of $15,000 against D'Amico in Count II. Kuffel, the other defendant in Count II, was never served. As to Count III, Horton's common-law negligence action against D'Amico and Kuffel, there were no instructions given to the jury and no verdict was ever returned. Although the record contains no formal dismissal of Count III, nowhere in the record of proceedings at trial is Count III ever considered.

This appeal concerns only the Count I defendants. D'Amico, a defendant in Count II, has not appealed the $15,000 verdict against him.

■■ Dram Shop defendants' first contention is that the administratrix was not a proper party plaintiff to bring the action under the Dram Shop Act. (Ill. Rev. Stat. 1969, ch. 43, par. 135.) Plaintiff responds that this

objection was not raised by answer, motion, or post-trial motion and was therefore waived. Defendants reply that in their answer to the first amended complaint, they denied that the plaintiff, Bernadine Lein, as administratrix, had a right to sue. Defendants, in answer to paragraph no. 8 of Count I of plaintiff's amended complaint state the following: "They deny the allegations of paragraph 8, except that they admit there is in force and effect a statute commonly known as the Dram Shop Act." Paragraph 8 of Count I of plaintiff's amended complaint reads as follows:

"That by virtue of the provisions of Chapter 43, Section 135 of the Illinois Revised Statutes, plaintiff is entitled to recover her damages of and from the defendants, Marie Pietruszewski, Robert Culum and Julia Culum."

We do not believe that such a general denial that plaintiff was entitled to relief is sufficient to preserve on review the issue of whether or not administratrix was a proper party to sue under the Dram Shop Act. This issue was never argued in the trial court and was not raised by motion or post-trial motion. It is a well established rule that an appellate court does not have authority to consider a matter not passed upon by the trial court. (*Trisko v. Vignola Furniture Co.* (1973), 12 Ill.App.3d 1030, 1034, 299 N.E.2d 421, 424; *Ray v. City of Chicago* (1960), 19 Ill.2d 593, 602, 169 N.E.2d 73, 78; *Consoer, Townsend & Associates v. Addis* (1962), 37 Ill.App.2d 105, 109-10, 185 N.E.2d 97, 99.) Furthermore, "an appellate court should not, and will not, consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented at the trial.'" *Hux v. Raben* (1967), 38 Ill.2d 223, 225, 230 N.E.2d 831, 832.

■■ Furthermore, the objection that the plaintiff, as representative of deceased, was an improper party plaintiff, is an objection to the pleadings which should have been raised by motion. (Ill. Rev. Stat. 1973, ch. 110, par. 45(1).) Section 45(1) further requires that "[t]he motion shall point out specifically the defects complained of * * *." Defendants did not file any motion with respect to the pleadings and the objection that plaintiff was an improper party under the statute was not specifically set out in the answer. Paragraph 8 of defendants' answer to Count I of the amended complaint denies only the allegation in the amended complaint that "by virtue of the Dram Shop Act plaintiff is entitled to recover damages from defendants." The essential, specific words "improper party plaintiff," "not the real party in interest," or the like, are never used.

Defendants' second contention is that the trial court committed reversible error when it refused under the Dead Man's Act to allow D'Amico to testify in his own behalf to the events of the stabbing.

The Dead Man's Act has been amended effective 1973, but this amendment has no application to the present case. The version of the Dead Man's Act applicable to this case is section 2 (Ill. Rev. Stat. 1969, ch. 51, par. 2) which reads in pertinent part as follows:

> "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any habitual drunkard, or person who is mentally ill or mentally deficient, or as the executor, administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending, and also except in the following cases, namely:
>
> *   *   *
>
> Third—Where, in any such action, suit or proceeding, any such party suing or defending, as aforesaid, or any persons having a direct interest in the event of such action, suit or proceeding, shall testify in behalf of such party so suing or defending, to any conversation or transaction with the opposite party or party in interest, then such opposite party or party in interest shall also be permitted to testify as to the same conversation or transaction."

Under the third exception, if Chester Horton, who testified at trial, was a party suing, then D'Amico's testimony should have been allowed. If Horton was not a party suing then D'Amico's testimony was properly disallowed under the Dead Man's Act.

In Count III of the amended complaint, Chester Horton is a plaintiff complaining against defendants D'Amico and Kuffel. Plaintiff, Bernadine Lein, states in her brief that during the course of the discovery deposition of Chester Horton, taken 5 months before the trial, attorneys for both defendants were advised that Mr. Horton was no longer pursuing his case against the defendants. Plaintiff further states in her brief that when the case was assigned to trial the court was advised that Mr. Horton was no longer a party plaintiff and that the court requested defense counsel to prepare an appropriate order.

Defendants correctly state that there is no record of any conversations concerning Horton's dismissal as a party plaintiff. Furthermore, no order dismissing Horton from the case was ever prepared. Although it is true that there was never any formal dismissal of Horton from the case, we believe that the case, taken as a whole, indicates that Horton was not a party suing when the case went to trial.

■■ Throughout the entire proceedings in the trial court, the plaintiff was referred to in the singular. In giving the instructions to the jury the court referred only to Bernadine Lein, the plaintiff in Counts I and II. No instructions were even tendered concerning Count III. Furthermore, the jury entered verdicts for the plaintiff, Bernadine Lein, on Counts I and II, but entered no verdict on Count III. Counsel for defendant D'Amico, who in the amended complaint is being sued by both Bernadine Lein in Count II and Chester Horton in Count III, referred to plaintiff in the singular in his closing argument. When Chester Horton testified at trial, he did not testify to any medical treatment, expenses or disability relating to his injuries. In light of these facts, we believe that Chester Horton appeared at the trial as a witness and not a party in interest and that the trial court ruled correctly in barring D'Amico's testimony under the Dead Man's Act.

Defendants' third contention is that the verdicts of the jury are so irrational that they may not be permitted to stand. On Count II, the wrongful-death count, the jury returned a verdict of $15,000. On Count I, the Dram Shop count, the jury returned a verdict of $135,000, which was reduced by the trial court to $20,000, the maximum recoverable under the Dram Shop Act. The defendants' argument is that damages for "pecuniary injuries" recoverable under the wrongful-death act include damages for loss of "means of support" recoverable under the Dram Shop Act. Defendants argue that because the jury returned a verdict of $15,000 on the wrongful-death count, this was the upper limit of recovery for loss of means of support under the Dram Shop count.

■■ We have reviewed the cases cited by the defendants and find nothing that dictates that the $15,000 recovery awarded by the jury under the wrongful-death count was the upper limit of recovery under the Dram Shop count. The procedure to be used in assessing damages under the Dram Shop Act is clearly stated in *Kurth v. Amee, Inc.* (1972), 3 Ill.App.3d 506, 510, 278 N.E.2d 162, 165:

> "We believe that the proper procedure is to assess the total damages, without reference to any amounts already received, and then reduce the verdict by such amounts. The difference, of course, would be subject to the maximum limits provided in the Act."

Using this procedure, the $135,000 awarded by the jury under the Dram Shop Act should be reduced by $15,000, with the resulting $120,000 subject to the $20,000 maximum recovery under the Dram Shop Act. This procedure was followed by the trial court.

Furthermore, the elements of damages for "pecuniary injuries" and the elements of damages for "loss of support" as set out in the instructions are

not so similar that it could be said that the jury was acting under an erroneous impression of the law when it returned verdicts with such a large monetary spread.

For the reasons above stated, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.