KAUFMAN & BROAD HOMES, INC., Plaintiff-Appellee, *v.* ALLIED HOMES, INC., Defendant-Appellant.

Third District No. 79-249

Opinion filed July 22, 1980.

Cyril J. Watson and Thomas J. Russell, both of Mitchell, Russell & Kelly, of Chicago, and Franklin D. Burkey, of Joliet, for appellant.

Louis R. Bertani, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This appeal arises from a decision rendered in a bench trial by the circuit court of Will County. We are urged by the appellant to find numerous errors in the proceedings below.

The controversy here at issue arises between the plaintiff, Kaufman & Broad Homes, Inc., and the defendant, Allied Homes, Inc., both parties being in the business of developing real estate properties in Will County and both parties being co-venturers in a project to build a sewage transmission facility in the same county. In a written agreement entered into on September 13, 1972, the plaintiff and defendant jointly undertook to construct the aforementioned facility to provide sewage disposal services for contiguous properties which the parties were developing individually near Bolingbrook, Illinois. According to the agreement, the facility was to be constructed for acceptance by the local public utility, Citizens Utility Company, Inc., and upon acceptance the facility would be transferred to and operated by Citizens.

The terms of the agreement provided that costs would be shared on an unequal basis, with Allied responsible for 30 percent of the total and Kaufman & Broad for the remaining 70 percent. Citizens desired a facility with capacity in excess of the capacity necessary for the real estate owned by the joint venturers, and the utility's commitment to pay for this "over-sizing" was likewise part of the agreement. Kaufman & Broad was named venture manager with general supervisory and management responsibilities for construction of the facility. Appended to the agreement of September 13 were exhibits which set forth preliminary specifications for construction of the facility and which contained cost estimates for the project.

Ten days after executing the venture agreement and approving the preliminary specifications and cost estimates appended thereto, each party was to deliver to the venture manager a letter of credit for its pro

rata share of the estimated development cost as a guarantee of its full performance. These letters of credit were to be renewable annually and to be adjusted in amount upon bids being awarded. Actual costs of the project were to be paid by the venture manager as incurred and due with Allied tendering reimbursement for its pro rata share within 20 days.

Apparently Allied never delivered its letter of credit for 30 percent of the estimated project costs, but the joint venture did not begin to become unraveled until Kaufman & Broad sent Allied a letter dated February 27, 1973. At that time the managing venturer reported to its co-venturer that negotiations for necessary easements had been finalized and that bids on the project had been received. The lowest bid exceeded the estimated project cost by 37 percent, and pursuant to the agreement, Kaufman & Broad requested the now tardy letter of credit, but in an amount adjusted by the bid actually received. That February 27 letter triggered a response from Allied expressing disapproval of the low bid and demanding a meeting between the joint venturers and Citizens.

Such a meeting was held on May 24, 1973, with representatives of both joint venturers present. Following that meeting, Kaufman & Broad's attorney, who had been present, set forth in a letter to Allied his understanding of the agreements reached. That understanding was that the bids would be again reviewed, but if no reduction could be negotiated, the cost was acceptable to both the venturers. Although at trial the representatives of Allied offered a different recollection of the May 24 meeting, there was from Allied no contrary response to the attorney's letter.

The review and renegotiation was conducted as agreed. Kaufman & Broad reported on June 8, 1973, that the "cost remains the same" and requested a now very tardy letter of credit. The letter of credit from Allied, guaranteeing full and faithful performance, was again requested in written correspondence from the venture manager to Allied on August 8, 1973, and January 4, 1974. Those requests were not honored and on March 11, 1974, this action was filed requesting in count I damages from Allied for its proportionate cost of the project plus interest. Also sought in count II were the costs and expenses in acquiring property rights and easements which Allied was to have made available for the venture project. After a lengthy trial, the circuit court awarded $219,000 to the plaintiff Kaufman & Broad for the claim made in count I and $29,000 for the claim in count II. On appeal from the order, Allied raises several grounds of alleged error.

■■ Allied first contends that Kaufman & Broad breached a fiduciary duty to its co-venturer such that the agreement was rendered null and void. For the proposition that the relationship between joint venturers is that of fiduciaries our attention is directed to *Ditis v. Ahlvin* *Construction*

*Co.* (1951), 408 Ill. 416, 97 N.E.2d 244, and *Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 147 N.E.2d 69. Accepting for our purposes the statement of law urged on us by Allied, we are reminded that "[f]acts constituting any affirmative defense, such as * * * that an instrument or transaction is void or voidable in point of law * * * must be plainly set forth in the answer or reply." (Ill. Rev. Stat. 1977, ch. 110, par. 43.) While the brief of Allied on appeal makes much of the purported avoidance effect of a breach of fiduciary duty, its amended answer as set forth in the record contains no affirmative defense but only a general denial of allegations therein contained. A general denial is ordinarily not sufficient to preserve for review matters which should have been specially pleaded or raised by motion. (*Lein v. Pietruszewski* (1974), 24 Ill. App. 3d 784, 321 N.E.2d 442.) The rationale for such a rule is to insure that the reviewing courts are not asked to pass on questions which were not raised and argued below. *Lein v. Pietruszewski.*

In an often-cited opinion, the appellate court has held that:

"The theory upon which a case is tried cannot be changed upon review. City of Chicago v. James E. Mulligan Enterprises, 27 Ill App2d 481, 170 NE2d 13. This rule applies to both the successful and the unsuccessful parties to the suit. Continental Ill. Nat. Bank & Trust Co. of Chicago v. National Casket Co., 27 Ill App2d 447, 169 NE2d 853. It is also a rule that a party will not be permitted to argue on appeal a defense not interposed by his answer. Bittner v. Field, 354 Ill 215, 188 NE 342; Dempster v. New York Cent. R. Co., 2 Ill App2d 47, 118 NE2d 56; Chicago Title & Trust Co. v. Hoffberg, 293 Ill App 290, 12 NE2d 230; Graf v. Perlman, 209 Ill App 172. The fact that certain evidence lends support to the defense does not mitigate the force of this rule (Hill v. Siffermann, 230 Ill 19, 82 NE 338; Chicago R.I. & P. R. Co. v. The People, 222 Ill 427, 78 NE 790) and asserting a new defense in final argument does not do so. While an appellee is not as limited in the scope of review as is an appellant, nevertheless, the review cannot go beyond the issues appearing in the record. In re Estate of Leichtenberg, 7 Ill 2d 545, 131 NE2d 487. The issues are determined from the pleadings and the evidence. To have evidence without pleading an issue is just as fatal as pleading an issue and not supporting it with evidence. Both are essential and each must conform to the other. Burke v. Burke, 12 Ill 2d 483, 147 NE2d 373; Neitzke v. Neitzke, 15 Ill App2d 473, 146 NE2d 708." (*Consoer, Townsend & Associates v. Addis* (1962), 37 Ill. App. 2d 105, 109-10, 185 N.E.2d 97, 99.)

We believe the policies supporting this rule warrant our continued adherence to its strictures. In any action before the trial court,

"[t]he proof presented is determined largely by the pleadings, the issues, and the theories there made. To permit a recovery upon a theory which was neither pleaded nor presented below, would preclude the adverse party from presenting evidence in rebuttal thereof and from offering other further or attendant theories predicated thereon. Such procedure would violate the concept of fundamental fairness embraced in our Civil Practice Act, wherein the Legislature sought to liberalize the framework within which disputes are presented to the end that they may be determined on their merits upon a specification of the real issues involved."

(*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89, 91.) In the instant case, the alleged breach of fiduciary duty is a defense which was not affirmatively set forth in the pleadings.

In its brief, Allied can only point to a single instance when the affirmative defense of breach of fiduciary duty was raised below. That single instance occurred during closing argument. We are reminded of the rule previously stated that asserting a new defense in final argument is not sufficient to raise the issue below. (*Consoer, Townsend & Associates v. Addis.*) Further, the record on appeal fails to preserve for our review the closing arguments made below, and we cannot take cognizance of statements of counsel in either their brief or argument which are unsupported by the record. (*Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637, 350 N.E.2d 242.) For the reason that the alleged breach of fiduciary duty was not properly raised below, we decline to consider it further as a ground for possible error as to either count I or count II.

As an additional ground for error, the appellant, Allied, argues that in ordering the payment of costs in excess of the written cost estimates contained in the venture agreement the circuit court has ignored the requirements of the parol evidence rule. It is true that the venture agreement provided that it contained "[a]ll understandings between the parties" and that it "should not be changed, modified, or altered unless such changes, modifications, or alterations are in writing and are executed by the parties." It is also true that the venture agreement provides for approval of the preliminary plans and cost estimates by both of the venturers. However, those plans and estimates were attached to and made a part of the agreement as Exhibits "A-2" and "A-3" at the time of its execution by Allied. The venture agreement itself anticipated that the cost estimates would differ from actual construction costs with the inclusion of the following provision:

"D. The letters of credit shall be adjusted and modified in amount upon bids being awarded for development of the sewage

treatment facilities pursuant to contracts which shall be attached hereto as Exhibit C and incorporated as part hereof."

The venture agreement clearly contemplates bids awarded at costs differing from the previously accepted estimates. That the trial court heard parol evidence regarding the amount of the actual bids, and Allied's disputed approval thereof, does not vary any term of the writing and thus does no violence to the parol evidence rule. We find no provision in the agreement between the plaintiff and the defendant which prevents oral approval of bids received subsequent to execution of the written agreement.

Finally, the defendant, Allied, suggests that 35 separate exhibits introduced into evidence were improperly admitted. Allied's objection rests on four grounds, that the exhibits (1) were immaterial and irrelevant, (2) lacked proper foundation, (3) were not the best evidence, and (4) were not business records. The 35 exhibits were all of the same genre. Each consisted of an invoice or invoices and other supporting documents attached to a canceled check or copy of a canceled check in payment of the accompanying invoice. Each was identified as being a record of the accounting department of Kaufman & Broad kept in the ordinary course of business. Each was identified as related to the construction of the joint venture facility. This foundation testimony was provided by the custodian of Kaufman & Broad's accounting records. We believe the records were properly admitted.

■■ The rule regarding admission of business records (Ill. Rev. Stat. 1977, ch. 110A, par. 236) was adopted to eliminate restrictive rules which resulted in "a mass of technicalities which serve[d] no useful purpose in getting at the truth" (5 Wigmore, Evidence 346, 361 (3d ed. 1940)). It was felt that the business of this great commercial country is transacted on records kept in the usual course of business and such evidence ought to be competent in a court of justice. (*People v. Small* (1925), 319 Ill. 437, 150 N.E. 435.) To that end, Rule 236 provides that:

"Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any * * * transaction * * * shall be admissible as evidence of the * * * transaction * * *, if made in the regular course of any business." (Ill. Rev. Stat. 1977, ch. 110A, par. 236.)

If the plaintiff had maintained a cash disbursements journal, and a clerk had made an entry in that journal recording the payment of an invoice, noting among other information the check number, check amount, date, payee, invoice number, goods or services invoiced, and trade discounts taken, no issue of whether Rule 236 applied would have been raised. The straightforward language of the rule would have forestalled such a

challenge. But here, because the duplicate copy of the check and the invoice—from which data for such journal entries would be transcribed—are themselves retained as the record of the transaction, it is argued that Rule 236 does not apply. Because the plaintiff's method of recording cash disbursements eliminates the potential for transcribing error and thus is more reliable than a journal entry, we are urged to hold that the 35 exhibits are not business records. To do so would unreasonably elevate form above substance. The plaintiff's accounting records as admitted into evidence by the circuit court record in the usual and ordinary course of business its cash disbursements.

■■ The 35 objected-to exhibits are clearly relevant and material as to the issue of damages. The venture agreement provides that "K & B shall pay all costs incurred and due and shall then bill out the proportionate share of all costs to Allied." The exhibits tend to prove the extent to which the venture manager has paid costs incurred under the agreement. The proponent of the 35 evidentiary exhibits met the minimal foundation requirements necessary for business records. We also determine that the exhibits offered were the best evidence. The exhibits were the writings which recorded certain cash disbursement transactions as obtained from the files of the accounting department of Kaufman & Broad. As such, the writings were the original business records.

From our review of the record, and after careful consideration of the oral and written arguments of counsel, we find no error in the proceedings below. Accordingly, and for the reasons hereinbefore set forth, the judgment of the circuit court of Will County is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.