115 Ill. App.3d 1026 (1983)
452 N.E.2d 3
AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO et al., Plaintiffs-Appellees,
v.
WALLACE A. ERICKSON et al., Defendants  (Wallace A. Erickson and Wallace A. Erickson & Co. et al., Defendants-Appellants).
Nos. 82-1546, 82-1663 cons.
Illinois Appellate Court  First District (1st Division).
Opinion filed June 20, 1983.
Rehearing denied July 25, 1983.
*1027 Robert P. Sheridan and John C. Vojta, both of Sapoznick, Sheridan & Freidin, of Chicago, for appellants.
Michael R. Turoff, Arthur L. Klein, and Michael J. Ranallo, all of Arnstein, Gluck & Lehr, of Chicago, for appellees.
Judgment affirmed.
JUSTICE McGLOON delivered the opinion of the court:
This is an appeal by defendants (Wallace Erickson, Gwendolyn B. Erickson and Wallace A. Erickson & Co.) from an order granting plaintiffs' (American National Bank and Trust Company of Chicago, Kenneth C. DeGon and Ruth Getz) motion for summary judgment in the amount of $4,546,618. The issues presented for review are whether the trial court erred in granting summary judgment for plaintiffs and whether the trial court erred in measuring damages.
We affirm.
Initially, we note that the separate appeals filed by Wallace A. Erickson (Wallace) and Wallace A. Erickson & Co. (the Company), and Gwendolyn Erickson (Gwendolyn) have been consolidated because they relate to the same summary judgment order.
In 1969, Wallace and Gwendolyn each owned 50% of the outstanding common stock of the Company. American National Bank loaned the Company $500,000 which was personally guaranteed by plaintiffs' decedent, William Getz. On May 2, 1969, Getz entered into a written agreement (agreement) with Wallace and Gwendolyn. The agreement *1028 provided that Getz loan Wallace 17,000 shares of Teledyne Corporation common stock for a period of two years. As security for the loan, all the outstanding shares of Erickson & Co. were pledged to Getz. During the two-year period, Wallace enjoyed full power to dispose of the shares restricted only by the requirement that he retire the $500,000 American National Bank loan upon any transfer or disposition of the shares.
The repayment provision of the agreement is particularly relevant to this appeal. Paragraph 1(g) provided:
"On or before two (2) years, [Wallace] shall deliver to Getz * * * (1) stock certificates representing the number and class of shares of Teledyne (or such other corporation into which shares of Common Stock of Teledyne shall have been converted) which Getz would then hold had he (aa) owned * * * 17,000 shares of Common Stock of Teledyne on [May 2, 1969] and (bb) had he not transferred any said shares or any non-cash distributions * * * and (2) an amount of money * * * equal to the total cash dividends, if any that Getz would have received * * *."
The agreement further specified that:
"It is the intention of the parties with respect to the foregoing that on or before two (2) years after the date of this Agreement [Wallace] shall deliver to Getz shares of stock and cash so as to replace Getz in exactly the same position with respect to the [17,000] shares loaned pursuant to this Agreement as he would be had he had not loaned the shares to [Wallace] and had he continued to have said [17,000] shares of Common Stock of Teledyne and all distributions made with respect thereto, but without interest."
Wallace failed to deliver the stock certificates and cash dividends, as required, on May 2, 1971. The following day, Wallace wrote Getz and acknowledged his default. He also proposed a modification of the agreement, whereby he agreed to repay the loaned Teledyne shares and to transfer to Getz the outstanding stock of Erickson & Co., which had previously been pledged as security. The modification was accepted. In 1974, Wallace repaid 1,000 shares of loaned Teledyne stock, leaving 17,035 shares still due and owing (18,035 shares was owed to Getz on May 2, 1971, by virtue of two 3% stock splits).
In January 1976, Getz commenced this action by filing a verified complaint seeking repayment of the loan. The present plaintiffs were substituted after Getz died and his estate was closed. On May 7, 1976, defendants filed a verified answer which admitted all of the material allegations of facts pledged in plaintiffs' verified complaint. Thereafter, *1029 plaintiffs moved for summary judgment based upon defendants' verified answers. Defendants were granted leave to amend their answer. The amended answer denied the previous admissions and asserted various affirmative defenses.
After a hearing, the trial court granted plaintiffs' motion for summary judgment. In July 1981, judgment was entered against Wallace and Erickson & Co. and plaintiffs were awarded damages of $5,046,618.70. In determining the damages the trial court multiplied the value of the stock as of the date of the order ($258) by 31,940 shares. (The shares increased to 31,940 due to various stock splits.) Finally, the trial court reduced the award by $500,000 to account for the shares of Erickson & Co. stock previously conveyed to Getz pursuant to the modification agreement. The court further ordered that appropriate entries be made in the books of Erickson & Co. to reflect that plaintiffs were the legal holders of 100% of its outstanding shares.
First, defendants contend that the trial court erred in entering summary judgment for plaintiffs. To support their contention, defendants argue that because their amended answer superseded their original verified answer, the original answer cannot be relied upon to support plaintiffs' motion for summary judgment. We disagree.
 1 As a general rule, an amended pleading which is complete in itself, ordinarily supersedes the prior pleading. (Precision Extrusions, Inc. v. Stewart (1962), 36 Ill. App.2d 30, 183 N.E.2d 547.) However, a well-recognized exception exists where the original pleading is verified. (Yarc v. American Hospital Supply Corp. (1974), 17 Ill. App.3d 667, 307 N.E.2d 749; Burdin v. Jefferson Trust & Savings Bank (1971), 133 Ill. App.2d 703, 269 N.E.2d 340.) In such cases, the verified pleading remains part of the record. (Yarc; Burdin.) Moreover, any admissions which are not the product of mistake or inadvertence, contained in the original verified pleading, are binding judicial admissions. (Yarc; Burdin.) Furthermore, they remain binding upon the pleader even after an amendment. Farwell Construction Co. v. Ticktin (1978), 59 Ill. App.3d 954, 376 N.E.2d 621.
 2 In their original verified answer, defendants admitted all of the material allegations which were necessary to support summary judgment for plaintiffs. In their motion for leave to amend their answer, defendants averred that their original answer failed to contain certain allegations "due to inadvertence." However, the amended answer failed to disclose the original sworn admissions were a product of inadvertence. Here, as in Yarc, defendants merely abandoned the sworn admissions contained in their original answer without sufficient *1030 explanation. (Yarc.) Thus, we conclude that the trial court properly considered the judicial admissions in defendants' original verified answer. The judicial admissions were conclusive as to defendants' liability and summary judgment was properly granted.
 3 Second, defendants contend that the trial court erred in measuring damages. They argue that the proper measure of damages is the value of the shares as of the date of the breach. Again, we must disagree.
Paragraph 1(g), which is set forth above, provided that Wallace repay the loan of Teledyne shares by delivering to Getz stock certificates of Teledyne Corporation or such other corporation into which the loaned Teledyne shares were converted. Wallace was required to deliver to Getz the equivalent number of shares which he would have held, on the repayment date, had he never transferred the Teledyne shares including any stock dividends or splits plus cash representing the cash dividends which were distributed. The agreement specifically provided that "it is the intention of the parties" that Getz receive "* * * shares of stock and cash so as to replace Getz in exactly the same position * * * as he would be had he not loaned the shares * * *."
The proper measure of damages in a breach of contract action is the amount which will place an injured party in the position he would have been had the contract been performed. Menicocci v. Archer National Bank (1978), 67 Ill. App.3d 388, 385 N.E.2d 63; Kemp v. Gannett (1977), 50 Ill. App.3d 429, 365 N.E.2d 1112.
In the instant case, the trial court awarded plaintiffs a sum representing the value of the loaned shares as of the date which the court entered judgment. A lesser award would have enabled defendants to benefit from breaching the agreement. It would also have deprived plaintiffs of the increased value of the shares which they would have received had the agreement been performed. We therefore find that the trial court's measure of damages was proper.
Finally, Gwendolyn argues that the trial court erred by disposing of her interest in the Company's outstanding common stock since no relief was sought against her. However, the trial court's order provided that defendants receive a credit for the value of shares previously conveyed to Getz pursuant to the modification agreement of May 3, 1971. It also provided that Erickson & Co. make the appropriate entries on its records to reflect that plaintiffs were the legal holders of the outstanding stock of the Company. The trial court did not dispose of Gwendolyn's interest. The actual transfer took place on May 3, 1971, when Wallace transferred to Getz outstanding common stock of Erickson & Co.
*1031 Gwendolyn argues that Wallace had no authority to deal with her interest. However, this issue was never raised before the trial court and cannot be argued for the first time on appeal. Kaufman & Broad Homes v. Allied Homes, Inc. (1980), 86 Ill. App.3d 498, 408 N.E.2d 91.
For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.
Judgment affirmed.
GOLDBERG and CAMPBELL, JJ., concur.